# IN THE COURT OF APPEALS OF IOWA

No. 19-0457
Filed July 1, 2020

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**RUDY CHASE STROUD,**
        Defendant-Appellant.

_____

Appeal from the Iowa District Court for Linn County, Ian K. Thornhill, Judge.

Rudy Stroud appeals his criminal convictions arguing his counsel rendered ineffective assistance. **AFFIRMED.**

Shawn C. McCullough of Powell & McCullough, PLC, Coralville, for appellant.

Thomas J. Miller, Attorney General, and Martha E. Trout, Assistant Attorney General, for appellee.

Considered by Tabor, P.J., Ahlers, J., and Scott, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**SCOTT, Senior Judge.**

Richard Swenson was the owner of a five by ten foot utility trailer with wood sides. The trailer was registered, donned a license plate, and had a vehicle identification number (VIN). Swenson kept the trailer in the outside area of a storage unit facility. The trailer was secured with two locks on its tongue. On October 15, 2017, Swenson noticed the trailer was missing. He and the owner of the storage facility viewed surveillance footage, which showed the trailer leaving the facility hitched to a pickup. Swenson reported the trailer stolen. Swenson also searched for his trailer on a sell-and-swap type page on social media. In December, he found what he believed to be his trailer being listed for sale, which he reported to law enforcement. The evidence shows the trailer was listed by Rudy Stroud. Law enforcement messaged Stroud to see if the trailer was still available and arranged a time to meet. Stroud tendered his address, and Detectives Mark Strait and Shawn Ireland paid him a visit.

When the detectives arrived at the provided address, Stroud opened up his garage, which contained a trailer, and greeted the detectives.[1] Some small talk ensued, after which the detectives advised they were with the local sheriff's office and were conducting random inspections on homemade trailers. Stroud confirmed he recently registered the trailer as homemade.[2] When asked whether he made the trailer, Stroud responded, "Yeah, most of it." He stated he had the trailer for a

---

[1] The detectives' encounter with Stroud was captured by Ireland's body camera. The video was admitted as evidence and played for the jury.

[2] The trailer had actually been registered as "specially constructed." A representative from the treasurer's office verified in her testimony that this category includes homemade trailers.

few months, and he got it in "bits and pieces" from "a few different people," "people you come across stuff like that," "random people." He was unable to identify those individuals. He acknowledged he had recently painted it; the trailer had yellow paint on the fenders and black paint on the side railings.[3] It also donned a license plate not matching the one registered to Swenson. The evidence showed Stroud registered the trailer in his name in November and received a license plate. The detectives seized the trailer. Swenson subsequently identified the trailer as his. The trailer's VIN, which was ultimately uncovered by using solvent to remove the black paint, matched that of Swenson's trailer.

Strait eventually made contact with Stroud and advised him the trailer was stolen. Stroud stated he in fact did not make the trailer, but he got it from a girl, A.C., who previously had people living with her who left the trailer at her residence. According to Strait's testimony, Stroud stated A.C. advised him the individuals who left the trailer had stolen it, and A.C. asked if Stroud wanted it; Strait contacted A.C., who confirmed Stroud's account. At trial, A.C. testified A.O. and his girlfriend, M.S., left the trailer at her residence and never returned to retrieve it. Eventually, A.C. offered the trailer to Stroud. A.C. claimed she was unaware the trailer was stolen and believed it belonged to A.O.'s father. She testified she offered it to Stroud because she considered it abandoned. Stroud testified A.C. contacted him about an abandoned trailer and he offered to take it off her hands. According to Stroud, when he retrieved the trailer, it was in bad shape, and he subsequently made several repairs and improvements. Thereafter, he used it to move his

---

[3] Swenson's trailer was "natural," not painted.

belongings from the home and then he decided to sell it.  He declined knowing it was stolen.

Stroud was formally charged by trial information with theft and fraudulent practices, both in the second degree.  Following trial, a jury found Stroud guilty of the lesser-included offenses of third-degree theft and fraudulent practices.  Stroud appealed following the imposition of sentence.

On appeal, Stroud claims his counsel was ineffective in failing to object to the following jury instruction:

> Evidence has been offered to show that the Defendant made statements at an earlier time.
>     If you find any of the statements were made, then you may consider them as part of the evidence, just as if they had been made at this trial.
>     You may also use these statements to help you decide if you believe the Defendant.  You may disregard all or any part of the defendant's testimony if you find the statements were made and were inconsistent with the defendant's testimony given at trial, but you are not required to do so.  Do not disregard the defendant's testimony if other evidence you believe supports it or you believe it for any other reason.

Until June 2018, the foregoing was our state bar association's model instruction on statements by a defendant.  Prior thereto, the Iowa Jury Instruction Committee issued a report noting the supreme court requested striking the language "just as if they had been made at this trial."  The bar association obliged.  Stroud's trial was held several months later.

Stroud argues his counsel rendered ineffective assistance in failing to object to the outdated model instruction as an incorrect statement of the law.  Appellate review of claims of ineffective assistance of counsel is de novo.  *State v. Gordon*, 943 N.W.2d 1, 3 (Iowa 2020).  To succeed on his ineffective-assistance-of-counsel

claim, Stroud must establish "(1) that counsel failed to perform an essential duty and (2) that prejudice resulted." *State v. Kuhse*, 937 N.W.2d 622, 628 (Iowa 2020); *accord Strickland v. Washington*, 466 U.S. 668, 687 (1984). We "may consider either the prejudice prong or breach of duty first, and failure to find either one will preclude relief." *State v. McNeal*, 897 N.W.2d 697, 703 (Iowa 2017) (quoting *State v. Lopez*, 872 N.W.2d 159, 169 (Iowa 2015)).

The supreme court recently clarified the outdated instruction is a misstatement of the law, *State v. Shorter*, ___ N.W.2d ___, ___, 2020 WL 3107683, at *7–8 (Iowa 2020),[4] so we conclude counsel failed to perform an essential duty in failing to object. We proceed to the prejudice prong. *See id.* at *8 (noting that, although the instruction was erroneous, "this does not mean that the instruction is necessarily prejudicial in a given case"). The prejudice prong will only be satisfied upon "a reasonable probability that, but for counsel's failure to perform an essential duty, the result of the proceeding would have been different." *State v. Booth-Harris*, 942 N.W.2d 562, 577 (quoting *State v. Ary*, 877 N.W.2d 686, 705 (Iowa 2016)).

Strait testified that Stroud knew the trailer was stolen and that he constructed the trailer. The video evidence also showed Stroud claimed he built the trailer, or at least most of it. Other evidence was presented to show Stroud made false statements that he "specially constructed" the trailer or that it was "homemade" in obtaining a registration for the vehicle. These party opponent statements on the part of Stroud formed the basis for Stroud's convictions of third-

---

[4] We note the supreme court addressed this issue because it may have arisen on retrial. *Shorter*, ___ N.W.2d at ___, 2020 WL 3107683, at *7.

degree theft and fraudulent practices.  *See* Iowa Code §§ 714.1(4) (2017) (defining theft to include the exercise of "control over stolen property, knowing such property to have been stolen, or having reasonable cause to believe that such property has been stolen, unless the person's purpose is to promptly restore it to the owner or to deliver it to an appropriate public officer"); 714.8(4) (defining fraudulent practices to include making "any entry in or alteration of any public records . . . knowing the same to be false").  At trial, Stroud denied he knew the trailer was stolen and that the trailer contained a VIN or was manufactured.  Even assuming the jury equated the out-of-court statements as sworn trial testimony, both Strait and Stroud were placed on the stand and testified under oath.  And other evidence was presented to show Stroud made statements consistent with fraudulent practices.  The jury had the opportunity to assess the credibility of witness testimony and the other evidence presented, and its verdicts necessarily show it found Stroud's trial testimony not credible.  In reaching its credibility determination, the jury was expressly instructed it could consider each witness's "interest in the trial, their motive, candor, bias and prejudice."  We are unable to agree with Stroud that omitting the challenged language "would have given more credibility to [his] proffered defense."  Even if the language were omitted, the jury would have still been entitled to consider the out-of-court statements as evidence.  Given the totality of the evidence, even if the jury had been properly instructed, we find no reasonable probability of a different outcome.  Consequently, we conclude Stroud was not prejudiced, and counsel was not ineffective as alleged.

We affirm Stroud's criminal convictions.

**AFFIRMED.**